OPINION
{¶ 1} Defendant-appellant, TransAmerica Real Estate Group ("TransAmerica"), appeals from the judgment of the Franklin County Court of Common Pleas denying its motion to set aside default judgment and motion for relief from judgment. For the following reasons, we affirm.
 {¶ 2} On May 21, 2004, plaintiff-appellee, The Waterford Tower Condominium Association ("Waterford"), initiated the underlying foreclosure action against TransAmerica, NBD Bank N.A., and Richard Cordray, Franklin County Treasurer, based on unpaid monthly assessment charges, special assessments, and penalties relating to Waterford Tower unit 100-A, which TransAmerica owns. TransAmerica is a general partnership, in which William Johnson and Gloria Johnson are partners. With its complaint, Waterford filed instructions for service, requesting personal service by process server upon "Transamerica Real Estate Group c/o William T. Johnson[,] 155 W. Main Street[,] Columbus, OH 43215[.]" On June 10, 2004, process server Roger C. Peppers filed a personal service return, in which he stated that he was unable to serve TransAmerica after "two attempts at home/office, no answer at door[.]"
 {¶ 3} On June 11, 2004, Waterford filed instructions for service, directing the clerk of courts to issue certified mail service to TransAmerica at the same address listed in its instructions for personal service. The clerk issued certified mail service on June 14, 2004. On July 9, 2004, the certified mail envelope addressed to TransAmerica was returned to the clerk's office bearing stamps indicating that the certified mail was "unclaimed."
 {¶ 4} On July 26, 2004, Waterford filed instructions for service, directing the clerk of courts to issue ordinary mail service to TransAmerica at the same address listed in its previous instructions for service. The clerk mailed two envelopes containing original summonses to TransAmerica on July 27, 2004.
 {¶ 5} Believing that it had validly served TransAmerica via ordinary mail, Waterford filed a motion for default judgment against TransAmerica on September 13, 2004. The trial court found that TransAmerica had been properly served via ordinary mail and granted Waterford's motion for default judgment in an October 4, 2004 judgment entry and decree of foreclosure.
 {¶ 6} After the trial court entered default judgment, the service envelopes sent to TransAmerica via ordinary mail were returned to the clerk's office on October 29, 2004, and November 1, 2004. Although the envelopes contain no stamps from the postal service suggesting failure of delivery, each envelope bears a black "x" through the address and a notation of "wrong mailbox[,]" handwritten in green ink.
 {¶ 7} On December 8, 2004, TransAmerica filed its motion to set aside default judgment and for relief from judgment, arguing that Waterford had not perfected service on TransAmerica and that TransAmerica had a meritorious defense to Waterford's claims.[1] Pursuant to an agreed order, filed December 16, 2004, the trial court stayed execution of Waterford's default judgment until after it ruled on TransAmerica's motion for relief from judgment, conditioned upon TransAmerica posting a bond.
 {¶ 8} On December 22, 2004, and January 20, 2005, Waterford filed memoranda in opposition to TransAmerica's motion for relief from judgment and various supporting affidavits. Also on December 22, 2004, process server Roger C. Peppers filed an amended personal service return. Although his original personal service return indicated that attempts to personally serve TransAmerica failed, Peppers states in his amended return that he personally served Gloria Johnson, a TransAmerica partner, on or about June 2, 2004. Peppers claims that, when he went to Waterford Tower unit 1803 to serve TransAmerica's summons on William Johnson, he encountered a woman who identified herself as "Mr. Johnson's wife." When Peppers handed her the service packets addressed to TransAmerica, she responded that she would not accept service for TransAmerica or her husband, and that her husband was going to avoid service. Mrs. Johnson then handed the service packets back to Peppers. In June 2004, Peppers was unaware that Mrs. Johnson was a TransAmerica partner and that service upon Mrs. Johnson constituted service upon TransAmerica. After learning that Mrs. Johnson is a partner in TransAmerica, Peppers amended his personal service return to reflect personal service of TransAmerica, via Mrs. Johnson, on June 2, 2004.
 {¶ 9} Despite Waterford's memoranda in opposition and supporting evidence, TransAmerica did not file a reply memorandum or submit additional evidence in support of its motion for relief from judgment. On May 9, 2005, the trial court issued a decision and final judgment entry, denying TransAmerica's motion for relief from judgment.
 {¶ 10} Subsequent to the trial court's final judgment, TransAmerica filed several motions, including a motion for reconsideration, a motion to consolidate a hearing on TransAmerica's motion for reconsideration with a hearing on a Civ.R. 60(B) motion pending in an unconsolidated companion case, and a motion to extend the December 16, 2004 stay. Waterford opposed each of TransAmerica's post-judgment motions.
 {¶ 11} On June 8, 2005, before the trial court ruled on its post-judgment motions, TransAmerica filed its notice of appeal. TransAmerica assigns the following as error:
I. THE TRIAL COURT ERRED IN DENYING TRANSAMERICA REAL ESTATE GROUP'S MOTION TO SET ASIDE DEFAULT JUDGMENT AND MOTION FOR RELIEF FROM JUDGMENT FILED DECEMBER 8, 2004, AS NO MEMBER OF TRANSAMERICA REAL ESTATE GROUP WAS EVER PROPERLY SERVED IN ACCORDANCE WITH THE OHIO CIVIL RULES.
II. THE TRIAL COURT ERRED IN DENYING TRANSAMERICA REAL ESTATE GROUP'S MOTION TO SET ASIDE DEFAULT JUDGMENT AND MOTION FOR RELIEF FROM JUDGMENT FILED DECEMBER 8, 2004, AS TRANSAMERICA REASONABLY ANTICIPATED THAT A HEARING WOULD BE SCHEDULED ON ITS MOTION TO PROVIDE FURTHER SUPPORT AND EVIDENCE AS TO WHY THE DEFAULT JUDGMENT SHOULD BE SET ASIDE.
III. THE TRIAL COURT ERRED IN PERMITTING WATERFORD TO MAINTAIN THIS ACTION AGAINST TRANSAMERICA, AS A FICTITIOUS NAME AND NON-EXISTING ENTITY.
Although Waterford did not file a notice of cross-appeal, it asserts the following assignment of error in its appellate brief:
DID THE TRIAL COURT COMMIT REVERSIBLE ERROR WHEN IT FOUND THAT APPELLANT TRANSAMERICA REAL ESTATE GROUP WAS A NEVADA PARTNERSHIP, WHEN THE RECORD CLEARLY ESTABLISHES THAT TRANSAMERICA REAL ESTATE GROUP IS AN ONGOING OHIO GENERAL OHIO [sic] PARTNERSHIP THAT HAS THE CAPACITY TO SUE AND BE SUED IN THE STATE OF OHIO AND TO OWN TITLE TO REAL PROPERTY?
 {¶ 12} Before turning to the merits of TransAmerica's appeal, we first address Waterford's motion to strike portions of TransAmerica's appellate brief. Specifically, Waterford moves to strike references to and arguments based on pleadings and evidence, including TransAmerica's motion for reconsideration and a supporting affidavit from Gloria Johnson, filed after the trial court issued its final appealable order.[2] Waterford argues that the trial court was unable to consider such arguments and evidence when it rendered judgment and that we may not consider such arguments and evidence on appeal.
 {¶ 13} It is well-settled that "[a] reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter." State v. Ishmail (1978),54 Ohio St.2d 402, paragraph one of the syllabus. Rather, appellate review is limited to the record as it existed at the time the trial court rendered its judgment. Chickey v. Watts, Franklin App. No. 04AP-818, 2005-Ohio-4974, at ¶ 14, citing Van Meter v.Stebner (Dec. 28, 1994), Medina App. No. 2348-M, citing McKayv. Cutlip (1992), 80 Ohio App.3d 487, 490, fn. 3; see, also,Hill v. Home Roam Pools, Ashtabula App. No. 2003-A-0097,2003-Ohio-5862, at ¶ 4-5 (appellate court struck from record amended complaint, filed after notice of appeal, because the trial court could not have considered it in reaching its decision). To consider arguments and evidence in TransAmerica's motion for reconsideration for the first time on appeal would be akin to adding matter to the record that was not before the trial court, in contravention of settled authority prohibiting appellate courts from doing so. Therefore, Waterford's motion to strike is granted, and we will consider the record as it existed when the trial court issued its final appealable order.
 {¶ 14} We now turn to TransAmerica's first and second assignments of error, in which TransAmerica argues that the trial court erred in summarily denying its motion for relief from judgment, pursuant to Civ.R. 55(B) and 60(B). Pursuant to Civ.R. 55(B), a trial court may set aside a default judgment in accordance with Civ.R. 60(B). In relevant part, Civ.R. 60(B) provides:
On motion and upon such terms as are just, the court may relieve a party * * * from a final judgment * * * for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; * * * or (5) any other reason justifying relief from the judgment. * * *
The Supreme Court of Ohio set forth the requirements for prevailing on a Civ.R. 60(B) motion in GTE Automatic Electric v.ARC Industries (1976), 47 Ohio St.2d 146, paragraph two of the syllabus:
To prevail on a motion brought under Civ.R. 60(B), the movant must demonstrate that: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken.
 {¶ 15} The determination of whether to grant a Civ.R. 60(B) motion is within the sound discretion of the trial court, and an appellate court will not reverse that determination absent an abuse of discretion. Moore v. Emmanuel Family Training Ctr.
(1985), 18 Ohio St.3d 64, 66. "`The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, quoting State v. Adams (1980), 62 Ohio St.2d 151,157.
 {¶ 16} In its motion for relief from judgment, TransAmerica argued that its failure to timely answer Waterford's complaint was the result of excusable neglect because Waterford failed to perfect service of process on TransAmerica. A plaintiff may perfect service upon a defendant partnership by serving the partnership by certified or express mail at any of its usual places of business or by serving a partner. Civ.R. 4.2(G). Although the trial court found valid mail service on TransAmerica in its entry of default judgment, the court premised its denial of TransAmerica's motion for relief from judgment on personal service on Gloria Johnson. Waterford maintains that it perfected service on TransAmerica both by personal service upon TransAmerica's partners and by mail. Upon concluding that Waterford validly served TransAmerica, the trial court found that TransAmerica failed to demonstrate entitlement to relief from default judgment and denied TransAmerica's motion.[3]
 {¶ 17} Where a plaintiff has not perfected service on a defendant, and the defendant has not appeared in the case or waived service, the court lacks jurisdiction to render a default judgment against the defendant. Rite Rug Co., Inc. v. Wilson
(1995), 106 Ohio App.3d 59, 62. In the absence of effective service, a default judgment is void. Bowling v. Grange Mut. Cas.Co., Franklin App. No. 05AP-51, 2005-Ohio-5924, at ¶ 27, citingNeiswinter v. Nationwide Mut. Fire Ins. Co., Summit App. No. 21691, 2004-Ohio-3943. "The authority to vacate a void judgment `is not derived from Civ.R. 60(B), but rather constitutes an inherent power possessed by Ohio courts.'" Gupta v. Edgecombe,
Franklin App. No. 03AP-807, 2004-Ohio-3227, at ¶ 12, quotingCompuServe, Inc. v. Trionfo (1993), 91 Ohio App.3d 157, 161. Therefore, a party seeking vacation of a void judgment must file a motion to vacate or set aside judgment, but need not establish either a meritorious defense or that the motion was timely under Civ.R. 60(B). CompuServe at 161.
 {¶ 18} We first examine whether the trial court erred by failing to hold an evidentiary hearing before ruling on TransAmerica's motion, as TransAmerica argues in its second assignment of error. Like the decision whether to grant or deny Civ.R. 60(B) relief, the decision whether to hold an evidentiary hearing on a Civ.R. 60(B) motion is within the trial court's discretion. Harris v. Echols, Franklin App. No. 01AP-1027, 2002-Ohio-2707, at ¶ 12. It is an abuse of discretion for a court to overrule a Civ.R. 60(B) motion without first holding a hearing when the motion and affidavits attached thereto contain allegations of operative facts, which, if true, warrant relief. Id., citing Twinsburg Banking Co. v. RHEA Constr. Co. (1983),9 Ohio App.3d 39.
 {¶ 19} TransAmerica first contends that it expected an evidentiary hearing based on the language of the agreed order staying enforcement of the default judgment and because a different trial judge granted a hearing on an identical motion in an unconsolidated companion case. Neither the agreed order nor the grant of a hearing in the companion case warrants the conclusion that the trial court abused its discretion here. The fact that two trial court judges arrived at different conclusions after exercising discretion to determine whether to grant an evidentiary hearing on TransAmerica's motions for relief from judgment does not compel the finding that either judge committed an abuse of discretion. With respect to the agreed order's provision for a stay of enforcement of judgment "until Defendant's counsel can be heard and a judgment is rendered on Defendant's Motion to Set Aside Default Judgment and Motion for Relief[,]" TransAmerica's counsel conceded at oral argument that one may interpret the agreed order as providing only a non-oral hearing. We also find TransAmerica's reliance on the agreed order as a basis for an oral hearing disingenuous, given Waterford's continued arguments in opposition to a hearing after its consent to the agreed order.
 {¶ 20} TransAmerica next argues that its motion for relief from judgment and supporting evidence contain sufficient operative facts to require a hearing on the motion. In opposition to Waterford's assertions that it perfected service upon TransAmerica by both personal service and ordinary mail, TransAmerica claims that its first and only notice of the pending foreclosure action came when Mr. and Mrs. Johnson saw a foreclosure notice on the Waterford Tower announcement board in November 2004, upon their return from Florida, and that neither of the Johnsons was served with a summons. TransAmerica also notes that both the certified mail and ordinary mail envelopes, representing the clerk's attempts to serve TransAmerica by mail, were returned to the clerk's office.
 {¶ 21} In support of its motion, TransAmerica submitted an affidavit from Mr. Johnson. In his affidavit, Mr. Johnson speaks only to lack of service on himself, stating that he was not served with process and that he did not receive notice of Waterford's foreclosure proceedings. However, TransAmerica attached no evidence to its motion denying service on Mrs. Johnson or denying delivery of ordinary mail service. Thus, even if Mr. Johnson were to prove the statements in his affidavit at an evidentiary hearing, such proof, by itself, would not demonstrate lack of service on TransAmerica. Accordingly, Mr. Johnson's affidavit is insufficient to warrant a hearing on TransAmerica's motion for relief from judgment.
 {¶ 22} In addition to Mr. Johnson's denial of personal service, TransAmerica's motion contains unsworn assertions that Mrs. Johnson was not served with process and that Waterford therefore failed to properly serve TransAmerica. In State exrel. Fairfield Cty. CSEA v. Landis, Fairfield App. No. 2002 CA 00014, 2002-Ohio-5432, at ¶ 18, the Fifth District Court of Appeals noted "no clear direction under Ohio law as to whether [an unsworn allegation of no service] should warrant an evidentiary hearing to determine whether the * * * complaint was properly served on [the defendant]." In that case, the Fairfield County Child Support Enforcement Agency ("FCCSEA") filed a complaint to establish paternity, naming the defendant-appellant as the alleged father. After certified mail service was unclaimed, the clerk issued ordinary mail service to the defendant, who did not appear for an initial hearing or file an answer. Upon FCCSEA's motion, the trial court granted default judgment against the defendant. The defendant moved the trial court to set aside the default judgment, pursuant to Civ.R. 60(B), alleging that he received no notice of the action and was unaware of the proceedings. The trial court denied the defendant's motion. Despite the defendant's failure to file an affidavit in support of his Civ.R. 60(B) motion, the Fifth District concluded that, without a hearing, the trial court could not have appropriately assessed the credibility of the claimed failure of service. Therefore, the Fifth District held that the trial court abused its discretion in overruling the defendant's motion without providing an evidentiary hearing to assess his claim of invalid service.
 {¶ 23} This court faced a similar scenario in Gupta, where the defendant filed a motion to vacate a default judgment against him and supported his motion with various documents, but did not file an affidavit stating that he was not served with a summons and complaint. Although we discussed Landis, we did not decide whether unsworn statements denying service are sufficient to require a hearing on a motion for relief from judgment. InGupta, the defendant did not categorically deny receipt of the summons and complaint. Rather, the defendant merely stated that he did not recall receiving or seeing the complaint. Based on the record there, we concluded that consideration of the defendant's unsworn statements would not alter the conclusion that the defendant fell short of demonstrating lack of service.Gupta at ¶ 17.
 {¶ 24} With respect to Civ.R. 60(B) motions not based on failure of service, this court has repeatedly held that allegations of operative facts in the motion that, if true, would warrant relief from judgment are sufficient to require a hearing on the motion. In In the Matter of Wood (Aug. 12, 1997), Franklin App. No. 97APE01-77, we stated that, in the absence of a local rule or court order requiring submission of affidavits or other evidence in support of a Civ.R. 60(B) motion, a party seeking relief from judgment is not required to submit evidentiary materials with its motion. We held that "[w]here a timely filed Civ.R. 60(B) motion alleges operative facts warranting relief, the trial court should grant a hearing to take evidence and either discredit or verify those facts before ruling on the motion." Id. Similarly, in Your Financial Community ofOhio, Inc. v. Emerick (1997), 123 Ohio App.3d 601, 608, we stated that "when a Civ.R. 60(B) motion, though unsupported by evidentiary materials, sets forth with sufficient specificity facts that, if true, would justify relief, the trial court abuses its discretion if it overrules such a motion without sua sponte
conducting an evidentiary hearing." We see no reason to impose more stringent requirements on a movant who argues entitlement to relief from judgment based on failure of service.
 {¶ 25} If we were faced only with Waterford's attempts to personally serve Mr. and Mrs. Johnson, as TransAmerica's partners, we would conclude that TransAmerica's motion for relief from judgment, coupled with Mr. Johnson's affidavit, asserts sufficient operative facts to warrant an evidentiary hearing on TransAmerica's motion. TransAmerica has asserted that neither of the Johnsons was served with a summons, that neither of the Johnsons had notice of the proceedings against TransAmerica until November 2004, and that Waterford failed to serve any partner of TransAmerica. However, in addition to its attempts to serve TransAmerica personally through its partners, Waterford also attempted to serve TransAmerica by mail. Thus, we turn to the question of whether TransAmerica's motion and supporting affidavit contain operative facts demonstrating lack of valid mail service.
 {¶ 26} Waterford's attempt to serve TransAmerica by certified mail at "155 W. Main Street[,] Columbus, OH 43215" was unclaimed. Therefore, pursuant to Civ.R. 4.6(D) and upon instructions from Waterford's counsel, the clerk sent a summons and complaint to TransAmerica, at the same address, by ordinary mail. The clerk entered the fact of ordinary mail service in the record on July 27, 2004. Under Civ.R. 4.6(D), ordinary mail service is complete when the clerk enters the fact of mailing in the record, provided that the postal service does not return the ordinary mail envelope with an endorsement showing failure of delivery.
 {¶ 27} TransAmerica argues that ordinary mail service was invalid because the ordinary mail envelopes addressed to TransAmerica were returned to the clerk's office three months after they were mailed. The returned ordinary mail envelopes contain a handwritten notation of "wrong mailbox[.]" However, the returned envelopes contain no endorsement from the postal service indicating failure of delivery. In fact, the record contains evidence to the contrary, indicating successful delivery of the ordinary mail envelopes. Richard L. Overturf, the United States Postal Service mail carrier for the Waterford Tower, states in an affidavit that, on or about July 28, 2004, he delivered two large ordinary mail packages from the Franklin County Clerk of Courts to TransAmerica's mailbox. Mr. Overturf, who has served as Waterford Tower's mail carrier for seven years, states that he delivers mail addressed to TransAmerica to the mailbox for Waterford Tower unit 100-A and, when necessary, to specified overflow mailboxes. Mr. Overturf further states that the packages were not placed back in TransAmerica's mailbox for redelivery. Thus, the record contains evidence not only that the clerk's office mailed the ordinary mail envelopes to TransAmerica, but also that the postal service delivered them to TransAmerica's mailbox.
 {¶ 28} Absent an endorsement from the postal service on returned envelopes, indicating that delivery failed, ordinary mail service is complete at the time the clerk enters the fact of service by mail on the record. In Cervelli v. Cervelli (Mar. 26, 1993), Geauga App. No. 92-G-1703, the Eleventh District Court of Appeals determined that service was perfected where an ordinary mail envelope was returned to the clerk's office with a handwritten notation in pencil but without an endorsement from postal authorities indicating failure of delivery. Similarly, inHeights Mfg. Co. v. Pezzenti (Feb. 4, 1983), Mahoning App. No. 82 C.A. 24, the Seventh District Court of Appeals held that service was perfected by ordinary mail where the ordinary mail was returned to the clerk's office with no indication from the post office that the envelope was not delivered. There, the court stated that if it "were to vacate this judgment it would be sanctioning the refusal of service simply by mailing back to the court the envelope unopened." Id.
 {¶ 29} Although TransAmerica has asserted that the Johnsons were not served with process and never received notice of the proceedings against TransAmerica, neither the unsworn allegations in TransAmerica's motion nor the evidentiary materials attached thereto challenge that ordinary mail service was delivered to TransAmerica's mailbox at the Waterford Tower in accordance with Civ.R. 4.6(D). Although TransAmerica argues that the address on the certified and ordinary mail service envelopes contained no Waterford Tower unit number, Mr. Overturf testified that he delivers all mail addressed to TransAmerica at such address to the mailbox for unit 100-A, the TransAmerica property that is the subject of this action. Additionally, the tax mailing address on file with the Franklin County Auditor for such property is 155 West Main Street, Columbus, Ohio, 43215, with no unit number specified. TransAmerica has not asserted that it does not receive mail at the address to which the clerk of courts addressed the certified and ordinary mail envelopes, nor has TransAmerica denied that the ordinary mail envelope was delivered to its mailbox.
 {¶ 30} Because TransAmerica's motion and attached evidentiary material do not contain allegations of operative facts, which, if true, demonstrate failure of ordinary mail service on TransAmerica, we conclude that TransAmerica was not entitled to a hearing on its motion for relief from judgment. Moreover, based on the lack of any endorsement from the postal authority indicating that delivery failed, the sworn statement by Mr. Overturf that he placed the ordinary mail envelopes into TransAmerica's mailbox, and the fact that TransAmerica does not state that the ordinary mail was not delivered, we find that TransAmerica was validly served via ordinary mail. Because Waterford perfected valid ordinary mail service on TransAmerica, and because TransAmerica argued no other grounds for relief under Civ.R. 60(B), the trial court correctly concluded that TransAmerica failed to demonstrate entitlement to relief from judgment and correctly denied TransAmerica's motion for relief from judgment. Accordingly, we overrule TransAmerica's first and second assignments of error.
 {¶ 31} Next, we turn to TransAmerica's third assignment of error, in which TransAmerica argues that the trial court erred by permitting Waterford to maintain this action against "Transamerica," which it argues is a fictitious name and non-existing entity. Despite the fact that TransAmerica, in its partnership name, filed six counterclaims against Waterford, TransAmerica asserts that Waterford may not maintain this action against TransAmerica. TransAmerica argues that a plaintiff may not maintain an action against a defendant solely under a fictitious name and that any judgment rendered against a defendant under a fictitious name is void. In support of its argument, TransAmerica relies on the Supreme Court of Ohio's opinion in Patterson v. V M Auto Body (1992),63 Ohio St.3d 573. In Patterson, the Supreme Court held that a plaintiff could not maintain an action against a sole proprietorship solely in the fictitious name under which the sole proprietor conducted business. The Supreme Court reasoned that both the plaintiff and the defendant in a lawsuit must be legal entities with the capacity to be sued. The Supreme Court noted that an individual who conducts business as a sole proprietor under another name remains one person, personally liable for all his obligations. Thus, a sole proprietorship has no legal identity separate from its owner and may not be sued in its fictitious name. Id. at 575.
 {¶ 32} Under common law, a partnership lacked a separate legal identity from its individual partners. However, Ohio law treats partnerships differently from sole proprietorships, and the General Assembly has expressly determined that a partnership holding property in Ohio "may sue or be sued by the usual or ordinary name that it has assumed, or by which it is known." R.C.2307.16; see Wayne Smith Constr. Co., Inc. v. Wolman, Duberstein Thompson (1992), 65 Ohio St.3d 383, 386, fn. 1 (decided under former R.C. 2307.24). Thus, at least for pleading purposes, a partnership is a separate legal entity from its partners, andPatterson does not stand for the proposition that Waterford may not sue TransAmerica under the name by which TransAmerica holds the subject real property.
 {¶ 33} TransAmerica admits that it was originally formed as an Ohio general partnership in 1989, and that it purchased Waterford Tower unit 100-A in August 1990. However, TransAmerica argues that the Ohio general partnership dissolved by the terms of its partnership agreement in 2000, and that it subsequently reformed as a Nevada partnership. Pursuant to R.C. 1775.30(A)(1), the termination of the definite term set forth in a partnership agreement may cause dissolution of a partnership. However,dissolution of a partnership does not equate to termination
of a partnership. Rather, "[o]n dissolution the partnership is not terminated, but continues until the winding up of partnership affairs is completed." R.C. 1775.29. Thus, the fact that TransAmerica's partnership agreement allegedly terminated in 2000 does not, as TransAmerica suggests, compel the conclusion that TransAmerica is a non-existent entity. The record contains no evidence that TransAmerica wound up and terminated its affairs, paid its debts or distributed its assets to its partners. It is undisputed that, throughout this action, TransAmerica remained the owner of record of Waterford Tower unit 100-A and was, thus, the real party in interest.
 {¶ 34} TransAmerica also argues that neither William nor Gloria Johnson is a registered statutory agent for TransAmerica and that Waterford's failure to name or serve any of TransAmerica's general partners is fatal to Waterford's claims. TransAmerica's argument that neither William nor Gloria Johnson is a "statutory agent" for TransAmerica is irrelevant to the determination of this appeal because TransAmerica is a general partnership, not a corporation. Waterford named TransAmerica, the owner of record of the subject property, and served TransAmerica in accordance with the Ohio Rules of Civil Procedure. Because Waterford is entitled to maintain its foreclosure action against TransAmerica, the owner of the subject property, we overrule TransAmerica's third assignment of error.
 {¶ 35} Lastly, we turn to Waterford's own assignment of error, in which it contends that the trial court erred by stating, in its entry denying TransAmerica's motion for relief from judgment, that TransAmerica was a Nevada partnership rather than an Ohio partnership. Because we affirm the trial court's denial of TransAmerica's motion for relief from judgment and allow the trial court's default judgment to stand, we find Waterford's assignment of error is moot, and we therefore overrule it.
 {¶ 36} For the foregoing reasons, we grant Waterford's motion to strike, overrule TransAmerica's three assignments of error, and overrule Waterford's assignment of error as moot. Accordingly, the judgment of the Franklin County Court of Common Pleas is affirmed.
Motion granted; judgment affirmed.
Bryant and Travis, JJ., concur.
[1] On December 20, 2004, TransAmerica's attorney accepted service of process on behalf of TransAmerica while expressly preserving TransAmerica's arguments regarding failure of service prior to the entry of default judgment.
[2] TransAmerica's motion for reconsideration, filed after the trial court's entry of final judgment, was a nullity. SeeMarczika v. Bryan, Franklin App. No. 04AP-268, 2004-Ohio-4655, at ¶ 9.
[3] The trial court also found that TransAmerica did not establish a meritorious defense. However, because TransAmerica's sole basis for relief from judgment is lack of service, we do not reach the issue of TransAmerica's purported meritorious defense.